Dennis S. LEAVITT, Appellant,

v.

NORTHWESTERN BELL TELEPHONE COMPANY, Appellee.

No. 89–5300MN.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1990.

Decided Dec. 10, 1990.

Marcy S. Wallace, St. Paul, Minn., for appellant.

Steven R. Anderson, Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON, FAGG, and WOLLMAN, Circuit Judges.

FAGG, Circuit Judge.

Dennis S. Leavitt appeals the district court's order granting summary judgment in favor of his former employer, Northwestern Bell Telephone Company (Bell). Leavitt claims Bell breached its fiduciary duties by denying him benefits under its Management Income Protection Plan (the plan) in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1988). The district court rejected Leavitt's claim because he had signed a release settling the dispute with Bell. On appeal, Leavitt claims the district court committed error because the release violates ERISA and is unenforceable. We affirm.

Bell's plan provides separation benefits for employees in management-level positions targeted for elimination. When Bell targets a position, the plan requires Bell to offer separation benefits to managers in that position, in descending order of seniority, until a manager accepts the benefits and voluntarily quits. If no manager chooses to accept benefits, Bell terminates managers and pays them separation benefits in ascending order of seniority.

Leavitt served as a district manager for Bell for almost twenty years and was senior in that position when his supervisor telephoned him to offer benefits under the plan. Leavitt's supervisor informed him another district manager with less seniority was interested in the offer, and requested an immediate response. Leavitt knew this was not Bell's standard procedure for offering benefits. Leavitt declined the offer.

Confident his job was secure because of his seniority but fearing an undesirable transfer, Leavitt began seeking employment elsewhere, and was offered a job as president and chief of operations of another company. When Leavitt informed Bell he intended to resign and inquired about benefits under the plan, Bell informed him the only available benefits had been given to the manager with less seniority. After negotiating with Bell, Leavitt voluntarily terminated his employment and began working for his new employer. A few days later, Leavitt signed a separation agreement and general release (the release) that provided Leavitt would not sue Bell on any known or unknown claims of any nature in exchange for $15,000—an amount less than Leavitt would have received under the plan if he had accepted the offered benefits. The release did not affect Leavitt's rights under Bell's management pension plan.

Later, Leavitt sent several letters to Bell asserting he had been unfairly treated. Although Leavitt acknowledged he had relinquished any legal claim by signing the release, he asked Bell for additional compensation on moral grounds. After Bell rejected his requests, Leavitt filed this lawsuit. Bell moved for summary judgment, claiming the release discharged the company from any liability. The district court granted Bell's motion.

To decide Leavitt's appeal, we must first consider whether section 1110(a) of ERISA bars private (unsupervised) releases of statutory claims. If not, we must also determine whether the release Leavitt signed is enforceable.

Section 1110(a) of ERISA provides, "[A]ny provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [the fiduciary responsibility sections] shall be void as against public policy." 29 U.S.C. § 1110(a) (1988). In our view, a release is not an "agreement or instrument" within the meaning of section 1110(a). Section 1110(a) prohibits agreements that diminish the statutory obligations of a fiduciary. A release, however, does not relieve a fiduciary of any responsibility, obligation, or

duty imposed by ERISA; instead, it merely settles a dispute that the fiduciary did not fulfill its responsibility or duty on a given occasion. Indeed, Leavitt recognizes in his brief that section 1110(a) "does not mean . . . that whenever there is a claim for breach of fiduciary duty under ERISA, litigation must be continued to its bitter end without hope of legitimate, fair, negotiated compromise." We will not assign to Congress "the intent of making an unreasonable law—one requiring terminal litigation, rather than favoring settlements as does the general law." *Stobnicki v. Textron, Inc.*, 868 F.2d 1460, 1463 (5th Cir.1989) (ERISA permits settlement of benefit disputes). We conclude section 1110(a) does not bar releases of breach of fiduciary duty claims under ERISA.

■ Nevertheless, Leavitt asserts settlements of breach of fiduciary duty claims under ERISA must be supervised by the courts. Nothing in section 1110(a) or its legislative history provides support for Leavitt's assertion. Leavitt, however, analogizes ERISA to the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201–219 (1988). The Supreme Court has interpreted the FLSA to prohibit private releases of certain FLSA statutory coverages and rights, even though the statute is silent on the subject. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945). We believe the purposes behind ERISA and the FLSA differ. The FLSA establishes a national standard securing minimum compensation for the lowest-paid workers, but ERISA is concerned with protecting contractual benefits. ERISA addresses an entirely different group of employees, many of whom are well educated, well compensated, experienced in business, and aware of their legal rights. *See Runyan v. National Cash Register Corp.*, 787 F.2d 1039, 1043 (6th Cir.) (ADEA case), *cert. denied*, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986). Thus, private settlements of ERISA claims do not compromise the policies underlying ERISA.

■ Finally, we must decide whether the release Leavitt signed is enforceable. A fiduciary and a beneficiary can settle a disputed claim that the fiduciary breached its fiduciary responsibilities under ERISA if the claim is knowingly and voluntarily released. *Cf. Fair v. International Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116–17 (7th Cir.1990) (a bargained release of an ERISA claim is enforceable). To determine whether a release is knowing and voluntary, we apply general principles of contract construction. *Lancaster v. Buerkle Buick Honda Co.*, 809 F.2d 539, 541 (8th Cir.) (release of ADEA claims), *cert. denied*, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987); *Coventry v. United States Steel Corp.*, 856 F.2d 514, 521–22 (3d Cir.1988) (same). Because we are guided by principles of trust law, however, we must examine the totality of the circumstances in which the release was signed to ensure the fiduciary did not obtain the release in violation of its duties to the beneficiary. *See* G. Bogert & G. Bogert, *The Law of Trusts and Trustees* § 943, at 475–80 (rev. 2d ed. 1982); 3 A. Scott & W. Fratcher, *The Law of Trusts* § 217, at 348–49 (4th ed. 1988); *Restatement (Second) of Trusts* § 217, at 506–07 (1959).

■ In applying these principles to Leavitt's case, we must consider: (1) Leavitt's education and business experience; (2) Leavitt's input in negotiating the terms of the settlement; (3) the clarity of the release language; (4) the amount of time Leavitt had for deliberation before signing the release; (5) whether Leavitt read the release and considered its terms before signing it; (6) whether Leavitt knew of his rights under the plan and the relevant facts when he signed the release; (7) whether Leavitt was given an opportunity to consult with an attorney before signing the release; (8) whether Leavitt received adequate consideration for the release; and (9) whether Leavitt's release was induced by improper conduct on Bell's part. *See* G. Bogert & G. Bogert, *The Law of Trusts and Trustees* § 943, at 475–80 (rev. 2d ed. 1982); *see also Lancaster*, 809 F.2d at 541; *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir.1988) (ADEA case).

■ Based on the undisputed facts, we conclude the district court correctly enforced Leavitt's release. Leavitt was an

experienced management employee presented with an understandable contract that unambiguously released Bell of all liability relating to Leavitt's claim that Bell wrongfully denied him plan benefits. Bell informed Leavitt of the general contents of the settlement offer eleven days before he signed it, giving him time to take precautions and consult with others. Leavitt read the release and understood its terms before he signed it. There was no disparity of knowledge—Leavitt was familiar with his rights under the plan and he knew of the relevant facts underlying his ERISA claim when he signed the release. The release advised Leavitt of his right to consult an attorney, but Leavitt chose to sign the release without obtaining legal advice. In consideration for Leavitt's release, Bell paid him $15,000 to settle a disputed claim.

Although Bell presented Leavitt with a difficult decision—retire, accept the $15,000 settlement, and sign the release; retire, decline settlement, and pursue his legal rights under the plan; or not retire—Leavitt remained free to decide which alternative he preferred. There was no overreaching, exploitation, or other misconduct on Bell's part. Because Leavitt knowingly, voluntarily, and fairly settled his dispute with Bell, Leavitt's release effectively extinguished the claims asserted in this suit.

We affirm the district court.