943 F.2d 862
 56 Fair Empl.Prac.Cas. (BNA) 1328,
57 Empl. Prac. Dec. P 40,939
Joseph J. ULVIN,
Doris J. Anderson, Appellant,
Marlys Allen,
Leo J. Anderson, Appellant,
Lloyd J. Anderson, William D. Barabas,
Marjorie L. Betts, Appellant,
Cora Ann Bird,
Clinton A. Carlson, Appellant,
Earnestine Collins, Mary B. Devine, Roger Dixon, Helen Duffy,
Donald Feroe, Appellant,
Elaine L. Flynn, Joyce L. French, Joseph H. Gruber, Pat M.
Haugen, Mary Hightower, Delores Iverson, Leonard
W. Jackson, Jr., Arthur Janota, Bonnie
Johnson, Ronald A. Jones,
Wayne Keplinger, Katherine Koenig, Appellants,
Marilyn J. King, Otistine Koontzy, Thomas E. Lafond, Karla
K. Larson, David N. Lawrence, Linda M Levin a/k/a Linda
Levin Thomas, Julie Lozano, Renee M. McCarthy, Joan M.
Mirovsky, Linda J. Napier, Flordeliza V. Parayno, Noreine D.
Philbin, John Richard Potasnak, Cynthia Rataj, Richard
Regis, Carl W. Rettenmayer, David L. Roberts, Myron George
Sandefur, James Thomas Scannell, Sharon Ruth Stewart, James
T. Szczech, Kamal Tandon, Sheldon L. Thorkelson, Jessica
Waukazo, James Stanley Welman, Steven G. Williams, Erdine L.
Wolf, Mrs., as personal representative for the estate of
Karl Wolf, deceased, Karen Young,
v.
NORTHWESTERN NATIONAL LIFE INSURANCE CO., Appellee.
Joseph ULVIN,
Doris J. Anderson, Appellant,
Marlys Allen,
Leo J. Anderson, Appellant,
Lloyd J. Anderson, William D. Barabas,
Marjorie L. Betts, Appellant,
Cora Ann Bird,
Clinton A. Carlson, Appellant,
Ernestine Collins, Mary B. Devine, Roger Dixon, Helen Duffy,
Donald Feroe, Appellant,
Elaine L. Flynn, Joyce L. French, Joseph H. Gruber, Pat M.
Haugen, Mary Hightower, Delores Iverson, Leonard
W. Jackson, Jr., Arthur Janota, Bonnie
Johnson, Ronald A. Jones,
Wayne Kepliner, Katherine Koenig, Appellants,
Marilyn J. King, Otistine Koontzy, Thomas E. Lafond, Karla
K. Larson, David N. Lawrence, Linda M. Levin a/k/a Linda
Levin Thomas, Julie Lozano, Renee M. McCarthy, Joan M.
Mirovsky, Linda J. Napier, Flordeliza V. Parayno, Noreine D.
Philbin, John Richard Potasnak, Cynthia Rataj, Richard
Regis, Carl W. Rettenmeyer, David L. Roberts, Myron George
Sandefur, James Thomas Scannell, Sharon Ruth Stewart, James
T. Szczech, Kamal Tandon, Sheldon L. Thorkelson, Jessica
Waukazo, James Stanley Welman, Steven G. Williams, Erdine L.
Wolf, Mrs. as personal representative of the estate of Karl
Wolf, deceased, Karen Young,
v.
NORTHWESTERN NATIONAL LIFE INSURANCE CO., Appellee.
 No. 90-5561.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 15, 1991.
Decided Sept. 3, 1991.
 
 Jane Lang, Washington, D.C., argued (Rebecca K. Troth, Washington, D.C. and Paul C. Sprenger, Jean M. Boler and Thomas L. Garrity, Minneapolis, Minn., on brief), for appellants.
 Thomas P. Kane, St. Paul., Minn., argued (Marko J. Mrkonich and Paul W. Iversen, St. Paul, Minn. and Deborah Klein, Minneapolis, Minn., on brief), for appellee.
 Before ARNOLD and JOHN R. GIBSON, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 On November 2, 1988, Joseph Ulvin and Doris Anderson filed a class action against Northwestern National Life Insurance Company alleging violation of the Age Discrimination In Employment Act, 29 U.S.C. §§ 621-634 (1988). By April 1, 1990, more than fifty former and current Northwestern employees elected to opt into the action. The district court[1] dismissed the claims of plaintiff Doris Anderson and five of the opt-in plaintiffs because they lacked an adequate timely charge upon which to rest their claims. Ulvin v. Northwestern Nat'l Life Ins. Co., No. 3-88-730, slip op. at 7 (D.Minn. August 15, 1990). The district court also dismissed the claim of a sixth opt-in plaintiff, Clinton Carlson, because he signed a termination agreement in which he unambiguously released Northwestern from all liability for claims arising out of his termination. Id. at 10. The appellants claim that these rulings were in error. We affirm the judgment of the district court.
 
 
 2
 On March 31, 1988, Joseph Ulvin filed a timely charge with the EEOC alleging that Northwestern discriminated against him and fired him solely on the basis of age, and that Northwestern's actions against him were part of a general pattern and practice of class-wide discrimination against all Northwestern employees over forty years old.
 
 
 3
 On September 30, 1988, Doris Anderson filed a charge with the EEOC "alleging that [Northwestern] downgraded her position, bypassed her for promotion, and forced her to accept early retirement all because of her age." Slip op. at 5.
 
 
 4
 On November 2, 1988, Ulvin and Anderson filed a class action against Northwestern. Leo Anderson, Marjorie Betts, Donald Feroe, Wayne Keplinger, and Katherine Koenig each opted into the class action, and like Doris Anderson these five opt-in plaintiffs also complained that Northwestern had discriminated against them on the basis of age and had forced them to accept early retirement. None of the five opt-in plaintiffs filed charges with the EEOC, and each opted into Ulvin's class action more than 300 days after accepting early retirement.
 
 
 5
 At Northwestern's request, the district court dismissed Doris Anderson and the five opt-in plaintiffs from the suit. The court ruled that Doris Anderson did not file a timely EEOC charge, slip op. at 7, and she does not appeal that ruling. The court further reasoned that since Doris Anderson's EEOC charge was not timely, and the other early retirees did not file EEOC charges, the only way any of them could maintain an age discrimination claim against Northwestern would be by relying on Ulvin's timely charge. Id. at 5 (citing Kloos v. Carter-Day Co., 799 F.2d 397, 400 (8th Cir.1986) (suggesting that such piggybacking ought to be permitted under the "single filing rule" where at least one plaintiff files a timely charge)). The district court refused to allow the early retirees to base their claims upon Ulvin's charge because it concluded that although the charge alleged class-wide discrimination, the scope of the charge was not sufficient to put Northwestern on notice of the early retirees' claims and did not allow an opportunity for conciliation.[2] Id. at 6-7.
 
 
 6
 Appellants cite Kloos for the proposition that opt-in plaintiffs can rely on the timely charge of another plaintiff provided the charge "alleges class-wide discrimination or claims to represent a class." Kloos, 799 F.2d at 402. They argue that the district court erred by adding a new requirement to the rule of Kloos.
 
 
 7
 In Kloos, the plaintiff, Charles Kloos, sued Carter-Day Company, alleging that it discriminated against him on the basis of age. Thirteen others opted into the action. Of the thirteen opt-in plaintiffs, one had filed a timely charge, and another based his claim on a termination that occurred within 300 days of Kloos's motion for class certification. The district court dismissed for lack of subject matter jurisdiction the eleven opt-in plaintiffs who had not filed their own charges and had been terminated more than 300 days before Kloos' motion for class certification. Kloos, 799 F.2d at 399.
 
 
 8
 On appeal of the dismissal, Kloos argued that the administrative charges that he and one opt-in plaintiff filed provided an adequate basis to support the claims of the eleven opt-in plaintiffs who did not file charges. This court rejected Kloos' argument because we concluded that neither of the administrative charges alleged class-wide age discrimination or claimed to represent a class. Id. at 401. We also rejected Kloos' argument that an administrative charge alleging a personal claim should be construed broadly to include any matter that might reasonably grow out of the investigation of the original charge. Id. We affirmed the district court's decision to dismiss the eleven opt-in plaintiffs, stating: "Although ADEA opt-in class plaintiffs should not be required personally to file administrative charges, an ADEA class action must be based upon a charge that at least alleges class-wide discrimination or claims to represent a class." Id. at 402 (emphasis added).
 
 
 9
 Thus, Kloos only answered the narrow question of whether this circuit would recognize the single filing rule. The case did not address the more difficult question of whether there is any limit to the nature or type of claims opt-in plaintiffs can raise while relying upon another plaintiff's filing.
 
 
 10
 We stated in Kloos that the administrative filing requirement serves two important purposes. It gives the EEOC an opportunity to eliminate unlawful practices through informal conciliation, and it provides employers with formal notice of the charges being brought against them. Id. at 400. Keeping these purposes in mind, there must be some limit to what claims an opt-in party can raise when relying on the administrative filing of another. Certainly, when the filed charge is quite specific as to the scope of the class claim it raises, opt-in plaintiffs should not be permitted to raise claims that are far outside of that scope. Otherwise, the purposes of requiring an administrative filing would be thwarted; the EEOC would not be able to achieve any meaningful conciliation and employers would not be on notice as to the nature of the potential claims of opt-in plaintiffs.
 
 
 11
 Here, Ulvin's charge complained only that Northwestern demoted and subsequently fired him because of age. Nowhere in the charge did Ulvin mention Northwestern's early retirement program, or that Northwestern was coercing older employees into accepting early retirement. Ulvin was not eligible to participate in Northwestern's early retirement program. Northwestern terminated Ulvin seven days before the deadline for potential early retirees to announce their decision whether or not to retire. No early retiree filed a complaint with the EEOC until September 30, 1988, almost one year after the deadline for selecting early retirement had passed. Thus, Ulvin's EEOC charge did not alert Northwestern to the claims of the early retirees, nor did it create the possibility that the EEOC or Northwestern would attempt to conciliate the claims of early retirees.
 
 
 12
 Ulvin's EEOC charge was too narrow to support the discrimination claims of the early retirees. For this reason, we affirm the district court's decision to dismiss Doris Anderson and the other five early retirees from Ulvin's class action.
 
 II.
 
 13
 The second claim on appeal concerns opt-in plaintiff Clinton Carlson, who left Washington Square Capital, a wholly-owned subsidiary of Northwestern, under a negotiated termination agreement. Under the agreement, Carlson agreed to release Washington Square Capital and its affiliates of all liabilities, severance pay or any other obligation, except as set forth in the agreement.[3] In exchange for this release, Northwestern agreed to pay Carlson approximately $33,800 in severance pay and to extend his group life, health and disability insurance coverage for six months after his last day of employment. Carlson also negotiated for the inclusion of a clause whereby Washington Square Capital agreed to release him from liability for any loss that the company might incur as a result of his employment. Slip op at 10.
 
 
 14
 Carlson attempted to opt into Ulvin's class action, arguing that the termination agreement did not waive his ADEA claims because it did not specifically mention them. The district court dismissed Carlson from the case, holding that the termination agreement "clearly and unambiguously release[d Northwestern] from liability for the claims asserted by Carlson." Id. Following Lancaster v. Buerkle Buick Honda Co., 809 F.2d 539, 540 (8th Cir.), cert. denied, 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987), the court applied ordinary contract principles and concluded that when signing the termination agreement Carlson was not " 'bereft of the quality of mind essential to the making of a contract.' " Slip op. at 10 (quoting Anselmo v. Manufacturers Life Ins. Co., 771 F.2d 417, 420 (8th Cir.1985)). In reaching this conclusion the district court relied on the holding of Lancaster, that a termination agreement containing a broad release of all claims validly releases an employee's ADEA claims. 809 F.2d at 540-41.
 
 
 15
 Appellants ask this court to modify our holding in Lancaster because the Older Workers Benefit Protection Act, Pub.L. 101-433, § 201, 104 Stat. 978, 983 (1990) (codified as amended at 29 U.S.C.A. § 626(f) (West Supp.1991)), clarified congress' intent with regard to the waiver of ADEA claims. Under amended section 626(f), an individual may not waive any ADEA rights or claims except by a written waiver that specifically refers to the ADEA rights being waived. Appellants urge this court to consider the 1990 amendment as evidence of congress' intent with regard to waivers signed prior to the amendment.
 
 
 16
 The answer to appellants' argument is contained in the following express language of the 1990 amendment: "[this amendment] shall not apply with respect to waivers that occur before the date of enactment of this Act." Pub.L. 101-433, § 202(a), 104 Stat. 984 (1990).[4]
 
 
 17
 Appellants argue that even if the recent amendment to section 626 is not controlling, this court should abandon Lancaster and follow the more stringent standard that the Second Circuit followed in Bormann v. AT & T Communications, Inc., 875 F.2d 399 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989).[5] This court recently reaffirmed the validity of Lancaster in Leavitt v. Northwestern Bell Telephone Co., 921 F.2d 160, 162 (8th Cir.1990). Furthermore, the district court concluded that Carlson's release would have been valid even under Bormann, slip op. at 11, and the court did not err in this respect.
 
 
 18
 Appellants also make the broad claim that "there is a material factual dispute as to whether there was a 'voluntary and knowing' release of Carlson's rights under the ADEA," claiming that "at the very least there are disputed issues of fact that should be resolved by a jury."
 
 
 19
 Carlson was a vice president in Washington Square Capital's Real Estate Department when he signed the termination agreement. The district court observed that Carlson had access to the agreement for a considerable amount of time, that he chose not to consult an attorney, and that he was able to negotiate the addition of favorable terms to the agreement. Slip op. at 10. The court also stated that the agreement was written in clear, simple language, that it granted Carlson severance benefits in excess of those required by contract or statute, and that Carlson decided to sign the agreement of his own free will. Id.
 
 
 20
 Appellants point to no specific facts about which there is a material dispute, and we reject their general argument. Accordingly, we affirm the district court's order dismissing Clinton Carlson from Ulvin's class action.
 
 
 21
 We affirm the judgment of the district court.
 
 
 
 [1]
 The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota
 
 
 [2]
 Ulvin's charge contained the following clause:
 STATEMENT OF CLASS WIDE DISCRIMINATION ON BASIS OF AGE: I believe that Northwestern National Life Insurance Company's treatment of me is part of a general pattern and practice of discrimination against individuals over the age of 40 years by Northwestern National Life Insurance Company, and I am filing this charge on my behalf and on behalf of all other employees and former employees over the age of 40 years. Northwestern National Life Insurance Company has discriminated and continues to discriminate on the basis of age against its employees.
 
 
 [3]
 The release stated: "Acceptance by you constitutes a full and complete release of WSC and its affiliates with respect to liabilities, severance pay or any other obligation except as set forth herein."
 
 
 [4]
 We are aware that the Senate Report for the 1990 amendments disapproved this court's approach in Lancaster. S.Rep. No. 263, 101st Cong., 2d Sess. 31-32, reprinted in 1990 U.S.Code Cong. & Admin.News 1509, 1537. Congress is fully capable of enacting legislation that will limit or change a rule announced by a court, but it did not do so in this case and its comments do not provide a sufficient basis for this court to refuse to follow our earlier precedent
 
 
 [5]
 In Bormann, the Second Circuit elected to follow the Third Circuit and apply a "totality of the circumstances" standard, rather than ordinary contract principles, when determining whether an employee knowingly and willfully waived ADEA claims. 875 F.2d at 403