NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0766n.06
Filed: September 1, 2005

No. 04-1879

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARVIN TAYLOR, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| VISTEON CORPORATION, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: ROGERS and SUTTON, Circuit Judges; FORESTER, District Judge.[*]

SUTTON, Circuit Judge. Ninety former employees of Visteon Corporation appeal the dismissal of their ERISA breach-of-fiduciary-duty claim. Because the lawsuit falls within the scope of a release of claims that the plaintiffs signed, we affirm.

I.

When Visteon, a former subsidiary of Ford Motor Company, terminated numerous employees as part of a reduction in force, it offered the terminated employees two options under the Visteon Separation Program (VSP). Under the first option, employees received separation pay of

---

[*] The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

"[u]p to 3 months of base salary" and medical coverage that continued "for a maximum of three months." JA 84. Under the second option, Visteon offered more generous benefits to employees who were willing to sign a waiver of claims against the company. If employees signed the Waiver and Release Agreement, they would receive a separation-pay "Waiver Benefit" of (1) "[a]t least 3 and up to 12 months of base salary" and (2) continuing medical coverage "based on years of service up to 12 months." JA 84.

> The Waiver and Release Agreement says, in relevant part:
>
> 2. <u>Release of Employment Claims</u>. In consideration of the Waiver Benefit, I waive and release any and all rights or claims of any kind I may have . . . against Visteon Corporation . . . . Except as provided in the following paragraph, in the section entitled Rights or Claims that Survive, I agree not to start any proceedings of any kind against the Company relating in any way to my employment or the separation of my employment. I agree to terminate any proceedings I may have begun or withdraw from any I may be participating in relating to my employment. . . .
>
> 3. <u>Rights or Claims That Survive</u>. I do not waive or release any rights or claims I may have that may arise after this Agreement is signed or if it is not permitted by law, such as workers' compensation claims in some states. . . . However, by accepting the Waiver Benefit, I acknowledge that I give up any right I may have to any future recovery from the Company related to my legal claims that arose prior to the date I signed this Agreement.

JA 94.

In December 2003, ninety former employees who had signed the Waiver and Release Agreement sued Visteon, alleging a breach of fiduciary duties under ERISA as well as a number of state-law claims (fraud, misrepresentation and breach of the duties of good faith and fair dealing). The plaintiffs based each of these claims on the fact that Visteon, "in writing, informed each and every Plaintiff that the terms of the VSP, the Waiver Benefit, and the Waiver and Release

Agreement were non-negotiable." JA 73. Despite this representation and despite similar oral representations, the complaint continued, Visteon "did negotiate and gave other employees different and/or additional benefits than those identified in the VSP benefits." JA 74. Invoking the waiver, Visteon moved to dismiss the suit under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief may be granted.

The district court granted the motion. In rejecting plaintiffs' principal argument that their claims arose the moment that they signed the release and that they did not waive claims that arose on the date they signed the release, the district court reasoned: "Reading the release as a whole, it is clear that Plaintiffs released Visteon from any claims existing as they signed the agreement and that they only retained the right to pursue claims arising *after* they signed the release." JA 101. The district court also provided an independent explanation for rejecting plaintiffs' claims as a matter of law. Relying on its own precedent, *see Bittinger v. Tecumseh Products Co.*, 83 F. Supp. 2d 851 (E.D. Mich. 1998), and on two unpublished opinions from this court, *see Samms v. Quanex Corp.*, No. 95-2173, 99 F.3d 1139, 1996 WL 599821, at *3 (6th Cir. Oct. 17, 1996), and *Halvorson v. Boy Scouts of America*, No. 99-5021, 215 F.3d 1326, 2000 WL 571933, at *3 (6th Cir. May 3, 2000), the court concluded that plaintiffs could not avoid the Waiver and Release Agreement without tendering back the consideration they received for signing it. The district court also determined that the VSP is an ERISA plan and that ERISA preempts the plaintiffs' state law claims, two determinations that plaintiffs do not challenge on appeal.

II.

Plaintiffs first argue that their breach-of-fiduciary-duty claims fall outside the scope of the release because the claims did not accrue *prior to* the execution of the agreement but only *during* the signing of the agreement. We disagree.

Michigan law, the parties agree, governs the scope of the release. Under Michigan law, "[t]he scope of a release is controlled by the language of the release, and where . . . the language is unambiguous, [courts] construe it as written." *Adair v. State*, 680 N.W.2d 386, 399 (Mich. 2004); *Gortney v. Norfolk & Western Ry. Co.*, 549 N.W.2d 612, 614 (Mich. Ct. App. 1996). "The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity." *Gortney*, 549 N.W.2d at 615. Rather, "[a] contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." *Id.*

Plaintiffs' challenge to the district court's decision proceeds along these lines: (1) They did not rely on Visteon's statement that the VSP was non-negotiable until the moment they signed the Waiver and Release Agreement; (2) their breach-of-fiduciary-duty claims did not spring into existence until they signed the Agreement; and (3) accordingly the waiver and release does not bar these at-the-moment-of-signing claims. Even accepting these temporal allegations as true, as we must in assessing the sufficiency of a complaint, *Midkiff v. Adams County Regional Water District*, 409 F.3d 758, 762 (6th Cir. 2005), the agreement cannot be read to preserve these claims.

The release agreement contains two pertinent sections—one addressing the "Release of Employment Claims," the other addressing "Rights or Claims That Survive." The first section broadly states that the employee "waive[s] . . . any and all rights or claims of any kind I may have" against Visteon. JA 94. By itself, this sweeping language waives all claims against the company—those arising prior to signing the agreement, those arising at the moment of signing the agreement and those arising after signing the agreement. To emphasize the breadth of the release, the first section also says that the waiver includes claims "relating in any way to . . . the separation of my employment." *Id.*

The second section of the agreement removes some claims from the sweep of the release. It says that "any rights or claims I may have that arise *after this Agreement is signed*" survive. *Id.* (emphasis added). Up to this point in the agreement, then, claims that arose before signing or at the moment of signing are waived—for "after" signing does not, in normal usage, include "during" signing.

The rub, plaintiffs argue, comes from still another sentence in the second section of the agreement. It says: "However, by accepting the Waiver Benefit, I acknowledge that I give up any right I may have to any future recovery from the Company related to my legal claims that arose *prior to* the date I signed this Agreement." JA 94 (emphasis added). Focusing on the "prior to" language, plaintiffs argue that the release does not cover at-the-moment-of-signing claims but only claims in existence before (*e.g.*, "prior to" when) they signed the agreement.

That is not so for several reasons. First of all, this language does not purport to preserve claims but to relinquish them. By its terms, the sentence "give[s] up" claims rather than ensures their survival. And because the sentence does not appear in the "Release of Employment Claims" section, it makes little sense to construe the sentence to cut back on the broad waiver of claims provided there. Rather, the sentence appears in the "Surviv[al]" of "Claims" section as a rough description of the release provided one paragraph above.

Put another way, the release potentially relinquishes three types of claims—before-signing, at-the-moment-of-signing and after-signing claims. One paragraph later, the survival section addresses two types of claims: It says that claims arising "after" signing survive, while reiterating that those claims arising "prior to" signing do not. Silence in the survival section about at-the-moment-of-signing claims does not mean that they are preserved; it means that whatever the release says about them controls. And the language of the release admits of just one interpretation: It covers at-the-moment-of-signing claims.

In reaching this conclusion, it is worth emphasizing what plaintiffs have not argued. They have not contended that the alleged misrepresentation amounted to fraud in the inducement, which potentially would permit them to vitiate the entire agreement. That kind of contention does not call for a court to construe the scope of a release of claims but asks whether the agreement may be enforced at all. *See Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 943–44 (6th Cir. 1997) (setting out test for avoiding an ERISA-governed insurance policy where an insured fraudulently induces the issuance of a policy); *Nash v. Trs. of Boston Univ.*, 946 F.2d 960, 963–67 (1st Cir. 1991)

(recognizing that federal-common-law contract principles governing ERISA agreements include the concept of fraud in the inducement); *see also Shipley v. Arkansas Blue Cross & Blue Shield*, 333 F.3d 898, 902 (8th Cir. 2003) ("[W]e, like a number of our sister circuits, conclude that federal common law allows for the equitable rescission of an ERISA-governed insurance policy that is procured through the material misstatements or omissions of the insured."). Whether because some parts of the contract were agreeable to them or for some other reason, plaintiffs simply have not sought to vitiate the agreement in its entirety. *See* Taylor Br. at 12 ("Plaintiffs are not seeking to avoid the release.").

Plaintiffs next argue that ERISA prohibits the enforcement of releases of this sort. In doing so, they invoke 29 U.S.C. § 1110(a), which says that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." The district court never addressed this argument—and with good reason. Plaintiffs, it turns out, never raised the argument below. One of their lower-court briefs, we recognize, cited § 1110(a). But the citation responds to Visteon's contention that the lawsuit could not proceed until plaintiffs tendered back the Waiver Benefit they received in return for signing the agreement, explaining that a tender-back rule would violate ERISA-based public policy considerations. Because plaintiffs did not argue before the district court that § 1110(a) prohibits the enforcement of this kind of release, much less identify a case applying § 1110(a) in this setting, they cannot do so now. *See PACCAR Inc. v. TeleScan Technologies, L.L.C.*, 319 F.3d 243, 258 (6th Cir. 2003).

Nor at any rate does this argument appear to have merit, even if it had been preserved. Not only have plaintiffs failed to identify a single case that supports their interpretation of this section and not only have we been unable to identify one on our own, but several cases contradict their argument. Like most legal claims, ERISA claims (including breach-of-fiduciary-duty claims) may be settled. *See, e.g.*, *Leavitt v. Northwestern Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990) ("We conclude section 1110(a) does not bar releases of breach of fiduciary duty claims under ERISA."); *Seman v. FMC Corp. Ret. Plan for Hourly Employees*, 334 F.3d 728, 731–32 (8th Cir. 2003) (explaining that settlement agreements releasing claims—including claims against a fiduciary—in exchange for severance benefits may be enforced under ERISA); *Harlan v. Sohio Petroleum Co.*, 677 F. Supp. 1021, 1027 (N.D. Cal. 1988) (holding that § 1110(a) did not invalidate a release of "past or present" claims as to ERISA breach-of-fiduciary-duty claims); *cf. Srein v. Soft Drink Workers Union, Local 812*, 93 F.3d 1088, 1095–96 (2d Cir. 1996) (declining to decide the meaning of § 1110(a) in this context but noting that relying on it to void indemnification provisions in a settlement agreement would be "problematic"); *Packer Eng'g, Inc. v. Kratville*, 965 F.2d 174, 175 (7th Cir. 1992) (holding that § 1110(a) did not nullify a provision indemnifying a fiduciary who had been exonerated by a jury because "[m]aking a faithful fiduciary whole hardly 'relieves' the fiduciary of responsibility or liability").

In contrast to a contract purporting to relieve a fiduciary of future duties, a release of past breach-of-fiduciary-duty claims does not appear to implicate § 1110(a) because it "does not relieve a fiduciary of any responsibility, obligation, or duty imposed by ERISA; instead, it merely settles

a dispute that the fiduciary did not fulfill its responsibility or duty on a given occasion." *Leavitt*, 921 F.2d at 161–62; *cf. Rosenbaum v. Davis Iron Works*, 871 F.2d 1088, 1989 WL 36897, at *5 (6th Cir. Apr. 19, 1989) (applying § 1110(a) to bar a release that applied to "present and future" claims). Indeed, to forbid the settlement or release of ERISA breach-of-fiduciary-duty claims would promote "terminal litigation, rather than favoring settlements," including settlements that benefit litigants similarly situated to plaintiffs. *Leavitt*, 921 F.2d at 162. *See also Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("Public policy strongly favors settlement of disputes without litigation."); *Schering-Plough Corp. v. FTC*, 402 F.3d 1056, 1072–73 (11th Cir. 2005) (quoting *Aro Corp.*); *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 24–25 (4th Cir. 2005) ("[T]here is a general public policy favoring the post-dispute settlement of claims."); *Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1308 (11th Cir. 2003) (quoting *Aro Corp.*).

Consistent with this case law, plaintiffs released only those claims that related to alleged breaches of fiduciary duty that existed at the time they signed the agreement. JA 94 ("I do not waive or release any rights or claims I may have that may arise after this Agreement is signed."). Enforcing a waiver of this sort, for which plaintiffs received valuable consideration, does not *relieve* Visteon of any fiduciary duties; it merely *resolves* claims arising from those duties. *Leavitt*, 921 F.2d at 161–62.

Given these conclusions, we need not reach the district court's alternative ground for dismissing the complaint—that the tender-back rule barred these claims. *See Samms*, 1996 WL 599821, at *3; *Halvorson*, 2000 WL 571933, at *3.

III.

For these reasons, we affirm.