**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

PETER SCHUMAN; WILLIAM
COPLIN,

        *Plaintiffs – Appellants /
Cross-Appellees*,

  v.

MICROCHIP TECHNOLOGY
INCORPORATED; ATMEL
CORPORATION; ATMEL
CORPORATION UNITED STATES
SEVERANCE GUARANTEE
BENEFIT PROGRAM,

        *Defendants – Appellees /
Cross-Appellants*.

No. 24-2624,
24-2978

D.C. No.
4:16-cv-05544-
HSG

OPINION

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted May 12, 2025
San Francisco, California

Filed June 5, 2025

Before: Sidney R. Thomas, William A. Fletcher, and Milan
D. Smith, Jr., Circuit Judges.

Opinion by Judge Sidney R. Thomas

## SUMMARY[*]

### Release of Claims / ERISA

The panel reversed the district court's summary judgment against Peter Schuman and William Coplin in a case concerning the enforceability of a release of claims under the Employee Retirement Income Security Act of 1974 ("ERISA"); remanded to the district court for further proceedings; and dismissed for lack of appellate jurisdiction a cross-appeal by Microchip Technology Inc., Amtel Corp., and Amtel Corp. U.S. Severance Guarantee Benefit Program (collectively "Defendants").

In anticipation of a potential merger, Amtel Corp. created a benefits plan ("Plan"), governed by ERISA, for employees to receive severance in the event that an acquiring company fired Amtel staff. Soon after Microchip acquired

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Amtel, Microchip terminated Schuman and Coplin, without cause, and offered them significantly lower benefits than promised in the Plan in exchange for a release of all potential claims. Schuman and Coplin signed the releases.

Schuman and Coplin later filed a class-action complaint, on behalf of about 200 similarly situated former Amtel employees who had also signed releases, alleging violations of ERISA, including breach of fiduciary duty and denial of benefits, and challenging the enforceability of the releases.

The district court entered final judgment under Federal Rule of Civil Procedure 54(b) in favor of Defendants and against Schuman and Coplin, certifying for this court's review the question of what legal test should apply in determining the enforceability of the releases signed by Schuman and Coplin and the majority of class members.

The panel held that the district court's Rule 54(b) certification was not improper.

The panel held that courts must consider alleged improper conduct by the fiduciary in obtaining a release as part of the totality of the circumstances concerning the knowledge or voluntariness of the release or waiver. In evaluating the totality of the circumstances to determine whether the individual entered into the release or waiver knowingly and voluntarily, courts should consider the following non-exhaustive factors: (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the release language; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee knew of his rights under the plan and the relevant facts when he

signed the release; (7) whether the employee had an opportunity to consult with an attorney before signing the release; (8) whether the consideration given in exchange for the release exceeded the benefits to which the employee was already entitled by contract or law; and (9) whether the employee's release was induced by improper conduct on the fiduciary's part. Where, as here, the district court has found a genuine issue of fact material to the issue of a breach of fiduciary duty in obtaining the release of claims, the final factor warrants serious consideration and may weigh particularly heavily against finding that the release was "knowing" or "voluntary" or both.

The panel remanded to the district court for its application of the factors.

The panel dismissed for lack of jurisdiction Microchip's cross-appeal challenging the district court's denial of summary judgment as to the non-named plaintiffs. Pendent jurisdiction does not apply because the issue raised in the cross-appeal—whether the judgment against Schuman and Coplin extinguished the non-named plaintiffs' claims—is not inextricably intertwined with the issue properly before this court on interlocutory appeal.

**COUNSEL**

Michael Rubin (argued) and Matthew J. Murray, Altshuler Berzon LLP, San Francisco, California; Keith Ehrman and Cliff M. Palefsky, McGuinn Hillsman & Palefsky, San Francisco, California; William B. Reilly, Law Office of William Reilly, Mill Valley, California; for Plaintiffs-Appellants.

Mark G. Kisicki (argued), Kristina N. Holmstrom, and Elizabeth Soveranez, Ogletree Deakins Nash Smoak & Stewart PC, Phoenix, Arizona; Sean P. Nalty, Ogletree Deakins Nash Smoak & Stewart PC, San Francisco, California; Mark E. Schmidtke, Ogletree Deakins Nash Smoak & Stewart PC, Valparaiso, Indiana; David L. Schenberg, Ogletree Deakins Nash Smoak & Stewart PC, St. Louis, Missouri; for Defendants-Appellees.

**OPINION**

S.R. THOMAS, Circuit Judge:

In this appeal, we consider what legal test courts must apply to evaluate the enforceability of a release of claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). We hold that courts must decide whether the employee entered into the release knowingly and voluntarily by examining the totality of the circumstances, including enumerated factors. This inquiry requires an assessment of whether any improper fiduciary conduct, such as an employer's breach of an ERISA-imposed fiduciary

duty in the course of obtaining the release, undermines the validity of the release.

We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 because the district court properly entered judgment pursuant to Federal Rule of Civil Procedure 54(b). As discussed *infra*, we lack appellate jurisdiction over the cross-appeal.

We review the district court's grant of summary judgment *de novo. King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730, 739 (9th Cir. 2017). We reverse and remand for proceedings consistent with this opinion.

## I

In anticipation of a potential merger, the technology company Atmel Corporation created a benefits plan ("Plan"), governed by ERISA, for employees to receive severance in the event that an acquiring company fired Atmel staff. Atmel told employees that the Plan, which included significant cash severance, was "intended to ease concerns."

The Plan would only pay out benefits if several conditions were met. First, the Plan would expire "on November 1, 2015 unless an Initial Triggering Event . . . ha[d] occurred prior" to that date. The Plan defined an "Initial Triggering Event" as occurring "only if the Company enter[ed] into a definitive agreement . . . on or before November 1, 2015, that [would] result in a Change of Control of the Company." If such an event occurred, the Plan would "remain in effect for" the next eighteen months.

Second, if the "Initial Triggering Event" occurred by the deadline, Atmel employees could then receive the benefits only if two more conditions were met: (A) "[a] Change of

Control actually occur[red];" and (B) "[t]heir employment [was] terminated without 'Cause' by the Company (or its successor) at any time within 18 months of the execution date of the Definitive Agreement."

The meaning of the key language in these conditions—specifically, whether an eventual "Change of Control" had to involve the same company with which Atmel entered into a "definitive agreement" on or before the November 1, 2015 deadline—remains in dispute.

In September 2015, Dialog Semiconductor agreed to acquire Atmel. But before the merger closed, Microchip Technology Inc. put in a competing offer. Microchip agreed in January 2016 to acquire Atmel. Between the Dialog deal and the announcement of the Microchip agreement, an Atmel human resources executive assured employees that the Plan would provide benefits for those "terminated without Cause in connection with a Change of Control of the company, including an acquisition by Dialog or Microchip." After the Microchip agreement, Atmel's human resources department circulated a "Frequently Asked Questions" document—which evidence suggests Microchip reviewed and approved—stating that Microchip would honor the Atmel Plan. Microchip's merger with Atmel officially closed in April 2016.

Soon after the merger, Microchip terminated the named plaintiffs in this suit, Peter Schuman and William Coplin, without cause, and offered them significantly lower benefits than promised in the Plan in exchange for a release of all potential claims. Letters to Schuman and Coplin accompanying the proposed releases stated that Atmel "and Microchip are making this offer, in part to resolve any current disagreement or misunderstanding regarding

severance benefits previously offered by [Atmel]." Microchip informed Atmel employees that the benefits promised to them under the Plan were not available because the Plan had expired. Microchip's stance was that the Plan had expired because the deal initiated before the deadline, with Dialog, had not resulted in a finalized merger. Schuman and Coplin signed the releases.

Schuman and Coplin later filed a class-action complaint against Microchip, Atmel Corp., and Atmel Corp. U.S. Severance Guarantee Benefit Program (collectively, "Microchip"), on behalf of about 200 similarly situated former Atmel employees who had also signed releases.[1] The complaint alleged violations of ERISA, including breach of fiduciary duty and denial of benefits, and challenged the enforceability of the releases. As stated by the district court, Schuman and Coplin alleged that Microchip breached its "fiduciary duties by misinterpreting the [Plan] as having expired and encouraging Plaintiffs to sign releases in exchange for reduced severance benefits" because Microchip allegedly knew or should have known that the Plan remained valid.[2] The district court certified the class, and Microchip eventually moved for summary judgment.

Meanwhile, a group of nine former Atmel employees who had not signed releases also sued Microchip, alleging similar violations of ERISA. The two suits proceeded on parallel tracks before the same district judge. In the nine

---

[1] Discovery revealed that 5 members of the currently certified 220-member class did not in fact sign the release. The status of those class members remains unresolved and is not at issue in this appeal.

[2] There is no dispute about Microchip's status as a fiduciary as relevant here.

former employees' suit, the district court initially found that the Plan's key language regarding the "Change of Control" and "definitive agreement" unambiguously meant that the Plan had not expired by the time of the Microchip merger, and that Microchip had breached its fiduciary duties. On appeal, this Court concluded that the language was ambiguous, and remanded for further proceedings to resolve the Plan's meaning. *Berman v. Microchip Tech. Inc.*, 838 F. App'x 292, 293 (9th Cir. 2021). The parties in *Berman* then settled, leaving the meaning of the Plan's key language unresolved.

After *Berman* settled, Microchip renewed its summary judgment motion in Schuman and Coplin's class action, which had been stayed pending the expected trial in *Berman*. As described by the district court, Microchip "argue[d] that Plaintiffs knowingly and voluntarily waived their right to pursue claims under the Atmel Plan," which should dispose of the action. Schuman and Coplin argued that even if they had knowingly and voluntarily signed the releases, the releases were unenforceable because "Microchip violated its fiduciary duties by the very act of obtaining releases in exchange for sharply reduced severance payments" when it knew or should have known employees were still entitled to benefits under the Plan, contrary to Microchip's misrepresentations.

The district court granted summary judgment against the named plaintiffs but denied summary judgment for the non-named plaintiffs' claims. Strictly applying a six-part test from the First and Second Circuits, the district court found Schuman's and Coplin's releases were enforceable and therefore disposed of their claims. That test asks whether a

release was "knowing and voluntary" in light of the totality of the circumstances, including:

> (1) plaintiff's education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver.

*Morais v. Cent. Beverage Corp. Union Emps.' Supplemental Ret. Plan*, 167 F.3d 709, 713 n.6 (1st Cir. 1999) (citing *Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9, 12 n.4 (1st Cir. 1997)); *see also Finz v. Schlesinger*, 957 F.2d 78, 82 (2d Cir. 1992).

The district court analyzed each factor and found that Schuman and Coplin understood the terms and stakes of the release and signed it willingly. The district court did not consider any evidence of Microchip's alleged breach of fiduciary duties when analyzing these factors and reviewing the totality of the circumstances. It thus granted summary judgment against Schuman and Coplin.

As for the non-named plaintiffs, the district court found that the six-factor test was too individualized to support a class-wide conclusion that all of the releases were signed knowingly and voluntarily. Because the court had certified the class based in part on the expectation of evaluating the releases' enforceability on a class-wide basis, and the parties had not briefed the six-factor test at certification, the court ordered the parties to show cause "why the class should or should not be decertified."

The court then separately considered the non-named plaintiffs' claim that Microchip breached its fiduciary duties under ERISA because it knew or should have known that the Plan had not expired. The court denied summary judgment as to these plaintiffs because there was "at least one material dispute of fact regarding Defendants' knowledge of the Plan and its intended interpretation."

Subsequently, the district court entered final judgment under Federal Rule of Civil Procedure 54(b) in favor of Microchip and against Schuman and Coplin, certifying for our review the question of "what legal test the Court should apply in determining the enforceability of the releases signed by Plaintiffs Peter Schuman and William Coplin and the majority of class members." The district court wanted clarification as to whether it properly adopted and applied the First and Second Circuit's six-part test or whether it should have considered Microchip's alleged breach of fiduciary duties as part of its evaluation. The district court considered this a threshold question, to be answered before moving ahead with class treatment or decertification. The court stayed the remainder of the case pending appeal.

Schuman and Coplin appealed. Microchip cross-appealed, contending that the district court erred by denying summary judgment as to the non-named plaintiffs instead of applying the judgment against Schuman and Coplin to the rest of the class.

## II

The primary question in this appeal is what legal test determines whether an ERISA release is enforceable.

We first consider whether ERISA requires heightened scrutiny of a waiver or release of ERISA claims. In *Vizcaino*

*v. Microsoft Corp.*, 120 F.3d 1006, 1012 (9th Cir. 1997) (en banc), we suggested that if a waiver of ERISA claims had been at issue, we "would have [had] to consider whether" the waiver "must and would withstand special scrutiny designed to prevent potential employer or fiduciary abuse," and that a waiver would need to be "knowing and voluntary." However, it was unnecessary to decide that issue in *Vizcaino*. *Id.* Although we have since considered the enforceability of ERISA releases, we have not yet determined what the relationship is between enforceability and allegations of employer and fiduciary abuse, or whether releases must indeed withstand "special scrutiny." *See, e.g.*, *Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 504 F.3d 818, 823–25 (9th Cir. 2007) (assessing an alleged breach of fiduciary duty, finding no breach, and then evaluating whether the release was knowing and voluntary).

In accord with ERISA's purposes and guided by other circuits' approaches, we conclude that, when a breach of fiduciary duties is alleged, courts must evaluate releases and waivers of ERISA claims with "special scrutiny designed to prevent potential employer or fiduciary abuse." *Vizcaino*, 120 F.3d at 1012.

Requiring courts to consider evidence of a breach of fiduciary duty related to a release of claims under ERISA aligns with the statute's purpose, structure, and underlying trust-law principles. *See Tibble v. Edison Int'l*, 575 U.S. 523, 528–31 (2015); *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996).

Congress enacted ERISA "to protect . . . the interests of participants in employee benefit plans . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for

appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The statute "requires a fiduciary," such as an employer, "to discharge its responsibilities 'solely in the interest of the participants and beneficiaries' and 'for the exclusive purpose of . . . providing benefits'" to them. *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1051 (9th Cir. 2020) (quoting 29 U.S.C. § 1104(a)(1)).

The fiduciary duties ERISA imposes are drawn to a significant degree "from the common law of trusts, the law that governed most benefit plans before ERISA's enactment." *Varity Corp.*, 516 U.S. at 496. "The duty of loyalty is one of the common law trust principles that apply to ERISA fiduciaries," and includes "a duty to disclose" accurate and material information and the duty to "deal fairly." *Washington*, 504 F.3d at 823 (cleaned up). Relatedly, the Supreme Court has held that "[t]o participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense" breaches the employer's fiduciary duty, as doing so "is not to act 'solely in the interest of the participants and beneficiaries.'" *Varity Corp.*, 516 U.S. at 506 (quoting 29 U.S.C. § 1104(a)).

The question, then, is how to apply the required special scrutiny in practice. Four other circuits have adopted ERISA-specific tests for the enforceability of releases. *See Morais*, 167 F.3d at 713 & n.6 (totality of the circumstances, including six factors); *Finz*, 957 F.2d at 82 (substantially the same test); *Howell v. Motorola, Inc.*, 633 F.3d 552, 559 (7th Cir. 2011) (substantially the same, but weighing eight factors, including "improper conduct" by the fiduciary); *Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990) (substantially the same, but weighing nine factors,

including "improper conduct" by fiduciary and employee's awareness of rights).  In doing so, our sister circuits have recognized that "[b]ecause we are guided by principles of trust law . . . we must examine the totality of the circumstances in which the release was signed to ensure the fiduciary did not obtain the release in violation of its duties to the beneficiary." *Leavitt*, 921 F.2d at 162.

We accordingly conclude that courts must consider alleged improper conduct by the fiduciary in obtaining a release as part of the totality of the circumstances concerning the knowledge or voluntariness of the release or waiver.

In assessing the totality of the circumstances, our sister circuits have employed slightly different tests.  In contrast to the First and Second Circuit's non-exhaustive six-part test, the Seventh and Eighth Circuits have adopted more comprehensive but still non-exhaustive eight- and nine-part tests.  The Seventh and Eighth Circuits' tests vary slightly in wording and content, but both explicitly require consideration of any improper conduct by the fiduciary.[3] The approach of the Seventh and Eighth Circuits provides the right balance between a strictly traditional voluntariness

---

[3] The approaches differ in three respects:  (1) the Eighth Circuit asks "whether [the employee] was given an opportunity to consult with an attorney before signing the release," *Leavitt*, 921 F.2d at 162, while the Seventh Circuit asks "whether the employee was represented by counsel or consulted with an attorney," *Howell*, 633 F.3d at 559; (2) the Eighth Circuit asks whether the employee "received adequate consideration," *Leavitt*, 921 F.2d at 162, while the Seventh Circuit's inquiry is "whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law," *Howell*, 633 F.3d at 559; and (3) the Eighth Circuit asks whether the employee "knew of his rights under the plan and the relevant facts when he signed the release," *Leavitt*, 921 F.2d at 162, while the Seventh Circuit does not.

examination and an ERISA-based analysis.  Thus, we join their approach.[4]

Combining the two sets of factors, we hold that, in evaluating the totality of the circumstances to determine whether the individual entered into the release or waiver knowingly and voluntarily, courts should consider the following non-exhaustive factors:  (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the release language; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee knew of his rights under the plan and the relevant facts when he signed the release;  (7) whether the employee had an opportunity to consult with an attorney before signing the release; (8) whether the consideration given in exchange for the release exceeded the benefits to which the employee was already entitled by contract or law; and (9) whether the employee's release was induced by improper conduct on the fiduciary's part.

Where, as here, the district court has found a genuine issue of fact material to the issue of a breach of fiduciary duty in obtaining the release of claims, the final factor warrants serious consideration and may weigh particularly

---

[4] Schuman and Coplin urge us to adopt a test that would ask, as a prerequisite to any consideration of "knowing and voluntary," whether the release is unenforceable at the outset because of the fiduciary's improper conduct in obtaining it.  We decline to adopt that approach, which no circuit uses.

heavily against finding that the release was "knowing" or "voluntary" or both.

Given our formulation of the applicable test, we remand the question to the district court for its application of the factors.

III

Contrary to Microchip's assertion, the district court's Rule 54(b) certification was not improper.  The order certified the question of "what legal test the Court should apply in determining the enforceability of the releases signed by Plaintiffs Peter Schuman and William Coplin and the majority of class members."

Under Rule 54(b), "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  The district court here both expressly directed entry of final judgment against Schuman and Coplin and expressly determined that "there is no just reason for delay." *See United States v. Gila Valley Irrigation Dist.*, 859 F.3d 789, 797 (9th Cir. 2017); *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009).

"Our function on appeal is to 'scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units.'" *Noel*, 568 F.3d at 747 (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980)).  We review de novo the district court's determination of the "juridical concerns" underlying the order, such as the "interrelationship of the claims," while

the "equitable analysis" regarding the need for an interlocutory appeal "ordinarily 'is left to the sound judicial discretion of the district court.'" *Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 628 (9th Cir. 2015) (quoting *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878–79 (9th Cir. 2005)).

The order easily satisfies each requirement. The district court's reasoning as to the "juridical concerns" properly centered on the need to answer the threshold legal question of the test for enforceability of all class members' releases to "streamline the ensuing litigation," including by guiding the determination of whether class treatment was still appropriate. *Id.* (quoting *Noel*, 568 F.3d at 747). The district court's "assessment of equitable factors such as prejudice and delay" was similarly proper, *Noel*, 568 F.3d at 747, as the court found that "all parties, and the Court, will benefit from a prompt interlocutory review" to resolve the legal question, *see Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797–98 (9th Cir. 1991). There was no error in the certification order.

## IV

We lack appellate jurisdiction over Microchip's cross-appeal from the underlying partial summary judgment order. An order granting partial summary judgment is not an appealable final order. *Dannenberg v. Software Toolworks Inc.*, 16 F.3d 1073, 1074 (9th Cir. 1994).

Microchip contends that pendent appellate jurisdiction or the collateral order doctrine nevertheless provides jurisdiction. This is incorrect. Pendent jurisdiction does not apply because the issue raised in the cross-appeal—whether the judgment against Schuman and Coplin extinguished the non-named plaintiffs' claims—is not "inextricably intertwined with" the issue "properly before us on

interlocutory appeal." *Meredith v. Oregon*, 321 F.3d 807, 812–13 (9th Cir. 2003) (cleaned up), *amended*, 326 F.3d 1030 (9th Cir. 2003). "[T]he legal theories on which the issues advance must either (a) be so intertwined that we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal, or (b) resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000) (citations omitted). But "two issues are not inextricably intertwined where their resolution requires 'application of separate and distinct legal standards'"—that is, standards that "turn on wholly different factors." *Arc of Cal. v. Douglas*, 757 F.3d 975, 993 (9th Cir. 2014) (first quoting *Meredith*, 321 F.3d at 815; then quoting *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1093 (9th Cir. 2007)).

Microchip's theory of jurisdiction is that "[t]he judgment entered against" the named plaintiffs—which is the issue "properly raised on interlocutory appeal"—"necessarily resolves" the issue raised in the cross-appeal, "*i.e.*, the legal consequence of that judgment for the unnamed class members." But the issue on appeal is a narrow one: whether the district court applied the correct legal test for enforceability of the releases, and, if not, what test is proper. The resolution of that legal issue does not "necessarily resolve[]" the issue of whether the district court should have granted summary judgment against the non-named plaintiffs as well. *Cunningham*, 229 F.3d at 1285.

Further, the legal standards relevant to the appeal and cross-appeal are "separate and distinct," as they "turn on wholly different factors." *Arc of Cal.*, 757 F.3d at 993 (cleaned up). Resolution of the appeal depends on legal standards specific to the enforceability of releases under

ERISA, whereas the cross-appeal requires application of legal standards governing the adjudication and management of class actions. These standards "turn on wholly different factors." *Id.*

The collateral order doctrine is similarly inapposite. Three conditions must be met for the doctrine to apply: "First, [the order] must conclusively determine the disputed question; second, it must resolve an important issue completely separate from the merits of the action; third, it must be effectively unreviewable on appeal from a final judgment." *United States v. Tillman*, 756 F.3d 1144, 1149 (9th Cir. 2014) (alteration in original) (quoting *Flanagan v. United States*, 465 U.S. 259, 265 (1984)). Microchip contends that the collateral order at issue is the partial grant of summary judgment in favor of Microchip, "against . . . only the class representatives."

"We need not address whether" the issue presented by the cross-appeal "meets the first and second prongs of the test outlined above because it is effectively reviewable on appeal." *Cunningham*, 229 F.3d at 1284. Reversing and remanding the grant of summary judgment against Schuman and Coplin gives Microchip another chance to argue that summary judgment against the named plaintiffs requires summary judgment against the class. The outcome would be reviewable on a later appeal.

We therefore dismiss the cross-appeal for lack of jurisdiction.

## V

In sum, we hold that releases and waivers under ERISA must "withstand special scrutiny designed to prevent potential employer or fiduciary abuse." *Vizcaino*, 120 F.3d

at 1012. This scrutiny requires courts to consider whether the plaintiff entered into the release knowingly and voluntarily, and will be of particular importance where, as here, there is evidence that the defendant potentially breached its fiduciary duty by or in the course of obtaining a release of ERISA claims. Summary judgment against Schuman and Coplin is reversed, and we remand to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED; CROSS-APPEAL DISMISSED.**