**LaTisha SATCHELL, Plaintiff,**

v.

**SONIC NOTIFY, INC., et al., Defendants.**

**Case No. 16–cv–04961–JSW**

United States District Court, N.D. California.

Signed 02/13/2017

Eve–Lynn J. Rapp, Edelson LLC, Benjamin Scott Thomassen, Edelson P.C., Chicago, IL, Rafey S. Balabanian, Stewart Ryan Pollock, Edelson PC, San Francisco, CA, for Plaintiff.

Michael Graham Rhodes, Max Bernstein, Esq., Whitty Somvichian, Cooley LLP, Hsiao C. Mao, Sheila Pham, Troutman Sanders LLP, San Francisco, CA, Jonathan Hing Yee, Ronald Irvin Raether, Jr., Troutman Sanders LLP, Irvine, CA, Scott Michael Hare, Law Office of Scott M. Hare, Pittsburgh, PA, Stephen Michael Flynn, Flynn Riley Bailey & Pasek LLP, San Rafael, CA, for Defendants.

## ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTIONS TO DISMISS AND CONTINUING CASE MANAGEMENT CONFERENCE

JEFFREY S. WHITE, United States District Judge

Now before the Court for consideration are the motions to dismiss filed by Yinzcam, Inc. ("Yinzcam"), Golden State Warriors, LLC ("the Warriors"), and Signal360, Inc. (f/k/a Sonic Notify, Inc.) ("Signal360"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and for the reasons set forth in the remainder of this Order, the Court HEREBY GRANTS, IN PART, AND DENIES, IN PART, the motions.

### BACKGROUND

Plaintiff, LaTisha Satchell ("Plaintiff"), brings this putative class action in which she asserts two claims for relief based on alleged violations of the Electronic Communications Privacy Act, 18 U.S.C. sections 2510, *et seq.* (the "Wiretap Act"). According to Plaintiff, the Warriors organization offers its fans a mobile application

("the App"), developed by Yinzcam, which "provides an interactive experience for fans by delivering scores, news, and other information relevant to the organization." (Compl. ¶ 2; *see also id.* ¶¶ 24–25.) Plaintiff alleges that the Warriors partnered with Signal360 "to integrate Signal360's beacon technology," into the App. (*Id.* ¶ 3.)

"Beacons are a novel method to track consumers and how they interact with marketing and advertisements" and permit companies to provide consumers with more targeted and specific advertisements, promotions, or content. (*Id.*; *see also id.* ¶¶ 17–23 (describing beacon technology in general).) Plaintiff alleges that Signal360 developed a "novel beacon technology called audio beacons, which identifies a consumer's physical location "through sounds rather than through radio signals." (*Id.* ¶ 22.) The audio beacon uses a speaker to emit a unique audio signal, "[b]ut for the technology to work, Signal360 requires a microphone to continuously listen for its audio signals." (*Id.* ¶ 23.)

According to Plaintiff, the microphone in question is the microphone in a smartphone. (*Id.* ¶¶ 4–5, 30–32.) "Defendants programmed the App to instantly turn on [a consumer's] Microphone. Once downloaded and opened, the App turns on a consumer's Microphone, listening and picking up any and all audio within range of the Microphone. The App continues listening until it is closed—either when the consumer's smartphone is shut off or when the consumer 'hard closes' the App[.]"[1] (*Id.* ¶ 30.) Plaintiff further alleges that "the App temporarily records portions of the audio for analysis," and she alleges that, by design, the App captures a consumer's private conversations. (*Id.* ¶¶ 4–5, 30–35.) Plaintiff also alleges that although "the App asks for certain permissions," including a request to use a device's microphone,

the Defendants do not advise consumers that the "App uses audio beacon technology that surreptitiously turns on consumers' smartphone microphones and listens in." (*Id.* ¶ 28.)

Plaintiff downloaded the App in April 2016 and used it until about July 11, 2016. Plaintiff also alleges she carried her smartphone with her "to places where she would not invite other people, and to places where she would have private conversations." (*Id.* ¶ 35.) Plaintiff contends that because the "App was continuously running on her phone, Defendants [*sic*] App listened-in to private oral communications." (*Id.*) Plaintiff also alleges Defendants acted without her consent or knowledge. (*Id.* ¶¶ 35–36.)

Based on these, and other allegations that the Court shall address as necessary, Plaintiff asserts two claims for relief based on alleged violations of the Wiretap Act. In each claim, she argues that the Defendants violated 18 U.S.C. sections 2511(1)(a) and 2511(1)(d). The first claim for relief is asserted against Signal360 and the second claim for relief is asserted against each of the Defendants.

## ANALYSIS

### A. Applicable Legal Standard.

#### 1. Federal Rule of Civil Procedure 12(b)(1).

The Court evaluates a motion to dismiss for lack of Article III standing under Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A motion to dismiss under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, a defendant makes a facial attack, the factu-

---

1. Defendants dispute Plaintiff's account of how the App functions. However, for pur-

poses of this motion, the Court must accept these allegations as true.

al allegations of the complaint are taken as true. *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation and quotations omitted). The plaintiff is then entitled to have those facts construed in the light most favorable to him or her. *Federation of African Am. Contractors*, 96 F.3d at 1207.

### 2. Federal Rule of Civil Procedure 12(b)(6).

Under Rule 12(b)(6), the Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a claim for relief will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Pursuant to *Twombly*, a plaintiff must not allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). In general, if the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246–47 (9th Cir. 1990).

### B. Plaintiff Alleges Sufficient Facts to Show She Has Article III Standing.

No principle is more fundamental to the role of the judiciary than the "constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). A party seeking to invoke the federal court's jurisdiction bears the burden of demonstrating that she has standing to sue. *See Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. If a plaintiff fails to satisfy the constitutional requirements to establish standing, a court lacks jurisdiction to hear the case and must dismiss the complaint. *See Valley Forge Christian Col. v. Americans United for Separation of Church and State*, 454 U.S. 464, 475–76, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). However, "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008). The fact that a plaintiff may allege facts that, at the pleading stage, satisfy the requirements for Article III standing does not mean these same facts would be sufficient to state a claim. *See Doe v. Chao*, 540 U.S. 614, 624–25, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004); *In re Facebook Privacy Litig.*, 791 F.Supp.2d 705, 712 n.5 (N.D. Cal. 2011) (quoting *Doe*, 540 U.S. at 624–25, 124 S.Ct. 1204).[2]

---

**2.** In cases "where there are multiple defendants and multiple claims," the plaintiff must

In order for Plaintiff to establish Article III standing, she must show she: "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130). "Where, as here, a case is at the pleading stage, Plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Defendants' primary argument is that Plaintiff fails to allege injury-in-fact.

 Injury-in-fact consists of "a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (internal citations omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S.Ct. at 1548. "[F]or injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotations and citations omitted). Plaintiff argues she has suffered two forms of injury: (1) the intangible harm associated with invasion of her right to privacy (*see* Dkt. 38, Opp. Br. at 6:12–8:22); and (2) "wear and tear" on her smartphone, consumption of battery life, and the diminishment of her "use, enjoyment and utility of" her smartphone (*see* Compl. ¶¶ 52, 61).

 "Article III standing requires a concrete injury even in the context of a statutory violation," but the term "concrete" in that context is "not . . . necessarily synonymous with 'tangible.'" *Spokeo*, 136 S.Ct. at 1549. In order to determine whether an "intangible harm constitutes injury in fact" for purposes of Article III

standing, both history and the judgment of Congress play important roles." *Id.*; *see also Van Patten v. Vertical Fitness Group*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Matera v. Google, Inc.*, No. 15-cv-04062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). Pursuant to *Spokeo*, a court may consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S.Ct. at 1549. A court also may consider the judgment of Congress, *i.e.* whether it elevated "'to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S. at 578, 112 S.Ct. 2130). A plaintiff will not, however, automatically satisfy the injury-in-fact requirement by asserting a violation of a statutory right. "[F]or example, "a bare procedural violation, divorced from any real harm," will not satisfy Article III's injury-in-fact requirement. *Id.*

> This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness. . . . For example, the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure. . . . Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified.

*Id.* (citations omitted, emphasis added).

In *Van Patten*, the plaintiff alleged the defendant violated the Telephone Consumer Protection Act ("TCPA") by sending him unwanted text messages. *Van Patten*,

demonstrate Article III standing "as to each defendant and each claim." *Reniger v. Hyun-*

*dai Motor America*, 122 F.Supp.3d 888, 895 (N.D. Cal. 2015).

847 F.3d at 1041. The court addressed the plaintiff's standing in light of *Spokeo* and held the plaintiff sufficiently alleged a concrete injury. The court reasoned that "[a]ctions to remedy defendants' invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states." *Id.*, at 1043. The court also reasoned that "Congress made specific findings that 'unrestricted telemarketing can be an intrusive invasion of privacy[.]" *Id.* (quoting Telephone Consumer Protection Act of 1991, Pub. L. 102–243, § 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991)). The court distinguished the facts from those presented in *Spokeo* on the basis that "the telemarketing text messages at issue here, absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA." *Id.* Therefore it concluded that "[a] plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Id.* (quoting *Spokeo*, 136 S.Ct. at 1549) (emphasis in *Spokeo*).

In *Matera*, the plaintiff alleged the defendant violated the Wiretap Act and California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq.*, when it "intercept[ed], scan[ned], and analyze[d] the content of Plaintiff's private emails for commercial purposes and without consent." *Matera*, 2016 WL 5339806, at *8. The court considered the plaintiff's standing in light of *Spokeo* and concluded the plaintiff alleged a concrete injury. In reaching this conclusion, the court considered the *Spokeo* Court's direction to consider the history and the judgment of Congress when evaluating intangible harms. Like the *Van Patten* court, the *Matera* court found that "[i]nvasion of privacy has

been recognized as a common law tort for over a century." *Id.*

"[T]he Wiretap Act and CIPA each prohibit the unauthorized interception of an individual's communications," and "were passed to protect against the invasion of privacy." *Id.*; *see also DirecTV, Inc. v. Webb*, 545 F.3d 837, 850 (9th Cir. 2008) ("[T]he Wiretap Act is aimed largely at privacy protection," and the "emphasis on privacy is evident in both the legislative history of the Wiretap Act and in the breadth of its prohibitions.").[3] The court recognized that a common law claim for invasion of privacy required proof of elements that were not required under the Wiretap Act, but it found that the harms at issue had a sufficiently close relationship to one another. *Id.* at *11; *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3rd Cir. 2016) (considering standing in light of *Spokeo* and concluding that plaintiffs alleged injury-in-fact for Wiretap Act claim, in part because, "Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private").

The *Matera* court also considered congressional judgment and found it significant that the Wiretap Act provided for a private right of action and did not require that a plaintiff prove actual damages. *Id.* at *13. The court also concluded that the Wiretap Act "create[d] substantive rights to privacy in one's communications." *Id.* Thus, the plaintiff did not merely allege a "bare procedural violation" of a statute. Rather, he alleged that the defendant had invaded his substantive privacy rights by intercepting, scanning, analyzing personal communications. The court found that was

---

**3.** The Warriors and Signal360 acknowledge this point and use it as a basis to argue that Plaintiff's allegations of wear and tear are not

the types of harms the Wiretap Act was designed to prevent. (*See* Dkt. No. 28, Mot. at 13:14–8.)

sufficient to "allege[ ] concrete injury." *Id.* Plaintiff's claims here raise similar issues, and both history and the judgment of Congress suggest support a conclusion that a plaintiff has standing to pursue claims based on this type of intangible harm.

█ The Warriors and Signal360 argue that, at best, the facts set forth in the Complaint show a technical violation of the Wiretap Act without any resulting harm. In support of this argument, they rely on *Nei Contracting and Engineering, Inc. v. Hanson Aggregates Pacific Southwest, Inc.*, No. 12-cv-01685-BAS (JLB), 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016). In that case, the plaintiff alleged the defendant "unlawfully recorded and intercepted" its cell phone calls, in violation of CIPA. Following a bench trial, the court concluded the corporate plaintiff had not proved injury in fact for purposes of Article III standing, because one of its employees testified he did not object to the existence of the recorded call and would have consented to it. Thus, the plaintiff was not "claiming an injury from the invasion of privacy." *Id.*, 2016 WL 4886933, at *5. Rather, the injury arose from the fact that the plaintiff had not kept records of sales and had relied on the defendant to provide it with that information, which defendant did not do in a timely fashion. *Id.*

█ "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (1992). The *Nei* court evaluated standing after a bench trial. In contrast, this case is at the pleadings phase and, thus, is in a different procedural posture. The Court finds *Nei* distinguishable on that basis.

The Warriors and Signal360 also rely on this Court's decision in *Supply Pro Sorbents, LLC v. Ringcentral, Inc.*, No. 16-cv-2113, 2016 WL 5870111 (N.D. Cal. Oct. 7, 2016). In that case, the plaintiff alleged the defendant violated the TCPA when it sent a facsimile that contained unwanted advertising information on the bottom of the facsimile cover page. *Supply Pro*, 2016 WL 5870111, at *1. In order to show injury-in-fact, the plaintiff alleged that "[a] junk fax interrupts the recipient's privacy." This Court concluded, however, that the plaintiff had not included facts to show how its privacy interests were harmed by "the single line identifier on the optional cover sheet of a solicited four page fax it received." *Id.* The Court finds the facts in this case are distinguishable. Here, Plaintiff alleges she was injured because the Defendants effectively converted her telephone into a "bug" and recorded and listened to private conversations are distinguishable.

Yinzcam argues that Plaintiff lacks standing, because she authorized the conduct at issue. In support of this argument, Yinzcam relies, in part, on *Opperman v. Path, Inc.*, 205 F.Supp.3d 1064 (N.D. Cal. 2016). In *Opperman*, the defendants moved for summary judgment on the plaintiffs' intrusion upon seclusion claim on the basis that the plaintiffs consented to the conduct at issue. Noting that "consent is defined by the scope of its terms," *id.*, at 1077, the court found the facts were disputed as to whether the plaintiffs had consented to the conduct at issue. Therefore, the court denied the motion for summary judgment. *Id.*, 1073–1077. The Court finds Yinzcam's reliance on *Opperman* unpersuasive. The *Opperman* case was decided on summary judgment, and this case is at the pleadings phase. Although Plaintiff includes allegations regarding the "permissions" requested by Defendants in connection with the App, the Court cannot determine as a matter of law from those allegations that Plaintiff consented to the

manner in which the microphone on her smartphone was used.

Defendants also argue that Plaintiff has not identified an interest that has been traditionally protected, because she fails to allege facts to show any improper intrusion on her privacy rights. The Court finds these arguments conflate the issue of standing with whether Plaintiff has stated facts to support the elements of her claim for relief, which is a separate inquiry. *See Doe*, 540 U.S. at 624–25, 124 S.Ct. 1204; *Equity Lifestyle*, 548 F.3d at 1189 n.10; *cf. In re Facebook Privacy Litig.*, 791 F.Supp.2d 705, 711–13 (N.D. Cal. 2011) (finding plaintiff alleged sufficient facts to establish standing to pursue Wiretap Act claim but failed to allege facts sufficient to state that claim).

Plaintiff's theory of injury is that Defendants captured and listened to private conversations without her knowledge or consent. (Compl. ¶¶ 6, 22–23, 31, 35, 48, 57, 59.) The Court concludes that Plaintiff has *alleged* facts sufficient to demonstrate she suffered injury-in-fact. In light of this ruling, the Court does not address whether Plaintiff's allegations of diminished resources also are sufficient to show injury-in-fact.

Accordingly, the Court DENIES the Defendants' motions to dismiss for lack of standing. However, because the Court is granting Plaintiff leave to amend, if Plaintiff does choose to file an amended complaint, she should make that theory of injury as explicit as the allegations regarding her diminished resource theory of injury. The Court now turns to whether Plaintiff's allegations are sufficient to state a claim.

## C. Plaintiff Has Not Stated a Claim for Violations of the Wiretap Act.

Under the Wiretap Act, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity ... which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). Plaintiff alleges that each of the Defendants intercepted and used oral communications, in violation of Sections 2511(a), which governs interceptions of such communications, and Section 2511(1)(d), which governs use of such communications.

### 1. Plaintiff Fails to Allege Facts to Show An "Interception" of a Communication.

 Defendants argue that Plaintiff fails to allege facts that show any defendant "intercepted" an oral communication.[4] The Wiretap Act defines "intercept" to mean "the aural or other acquisition of the *contents* of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4) (emphasis added).[5] Plain-

---

4. Plaintiff does not argue Defendants intercepted a "wire communication," and the allegations in the Complaint focus on "oral communications." (*See* Compl. at 1:19–25, ¶¶ 34–36, 46, 48, 57, 59.) Although courts have found telephone calls fall within the definition of wire communications, *see, e.g., Siripongs v. Calderon*, 35 F.3d 1308, 1320 (9th Cir. 1994), the Court expresses no opinion on whether Plaintiff's allegations would be sufficient to allege interception of a wire communication. Defendants, in turn, do not argue that Plaintiff is required to allege that they listened to

oral communications to have intercepted those communications. In addition, Defendants do not dispute the allegations that the App is an "electronic, mechanical or other device," within the meaning of the Wiretap Act. *See* 18 U.S.C. § 2510(5).

5. The term "contents, when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

tiff argues that at the moment the App began recording her conversations, each Defendant "intercepted" those conversations. The Warriors and Signal 360 argue that in order to allege an "interception," a plaintiff must allege a defendant came into possession of or had control over an oral communication, and they argue Plaintiffs' allegations are insufficient to do so.

The Ninth Circuit has construed the term "intercept" to mean that one must "*actually* [acquire] the contents of a communication[.]" *United States v. Smith*, 155 F.3d 1051, 1058 (9th Cir. 1998) (emphasis in original). The Wiretap Act does not define the term "acquisition." *See generally* 18 U.S.C. § 2510; *see also Smith*, 155 F.3d at 1055 n.7. As the *Smith* court noted, the ordinary meaning of the term "acquire" is "the act of acquiring or coming into possession of," something. 155 F.3d at 1055 n.7 (citing *Webster's Third New International Dictionary* 18–19 (1986)); *accord Webster's New Collegiate Dictionary* (1979) at 10–11 (defining acquire to mean "to come into possession or control of often by unspecified means" and "acquisition" as "the act of acquiring").[6] The Ninth Circuit subsequently held that an "acquisition occurs 'when the contents of a wire communication are captured *or* redirected in any way.' " *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (emphasis added) (quoting *Unit-*

*ed States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir. 1992)).

In *Siripongs*, a habeas case, the petitioner was arrested, and subsequently convicted, for murder. Shortly after his arrest and while at the police station, he made a phone call that one of the officers recorded using a concealed tape recorder. *Id.*, 35 F.3d at 1311, 1319. At the time petitioner made the call, the police offer who was recording the conversation "was standing three feet away" and "[a] television camera was suspended from the ceiling about eight feet from the telephone and pointed toward the phone." *Id.* at 1320. The petitioner sought habeas relief, in part, on the basis that the police violated the Wiretap Act when they recorded the conversation. *Id.* at 1319. The district court rejected the petitioner's argument on the basis that the communication at issue was an "oral communication" and not a "wire communication" and found the petitioner failed to establish the requisite expectation that his communication would not be overheard.[7]

The Ninth Circuit affirmed. *Id.* at 1320. It found that the district court "correctly treated the communication as an oral communication," because the police only "acquired only what they recorded [petitioner] saying into the mouthpiece, not what was transmitted over the wire." *Id.* It also concluded that the factual circumstances

---

6. In *Smith*, the court held the ordinary meaning of the term "acquisition" was broad enough to encompass the act of retrieving and recording a voicemail message from a company's voicemail system. 155 F.3d at 1055 n.7, 1059. That conclusion was based on the definition of "wire communication," which, at that time, included communications held in electronic storage. *Id.* at 1055. Congress subsequently amended the Wiretap Act to "eliminate[e] storage from the definition of wire communication," and the Ninth Circuit now requires that in order for a communication to be intercepted, "it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302

F.3d 868, 878 (9th Cir. 2002). In other words, interception requires "acquisition contemporaneous with transmission[.]" *Id.* Defendants do not argue Plaintiff's allegations are insufficient to satisfy that requirement.

7. The fact that police only captured what was said into the mouthpiece, rather than what was transmitted over the wire was significant, because "there is no independent need to establish an expectation of privacy when 'wire' communications are intercepted[.] ... [I]t is presumed that persons communicating by wire expect that what goes over the line will be private." *Siripongs*, 35 F.3d at 1320.

surrounding the conversation supported a conclusion that the petitioner could not have expected "privacy during his conversation." *Id.* Plaintiff's theory of liability is akin to that alleged in *Siripongs*, in that she premises her claims on the fact that Defendants allegedly "intercepted" what she said while her smartphone was in her presence and while the App was running.

In light of the *Noel* court's statement that "acquisition occurs 'when the contents of a wire communication are captured *or* redirected in any way,'" and considering that the *Siripongs* court implied that the police "acquired" the contents of communications when they recorded the petitioner's telephone conversation, the Court concludes that the allegations that App used the microphone to record surrounding audio, including conversations, would be sufficient to show "capture" of the contents of an oral communication. Although Plaintiff appears to argue otherwise, the Court finds that the term "acquire" requires some measure of possession or control over the contents of any oral communications that are "captured."

That conclusion is based on *Smith*, which noted that the plain meaning of the term requires some measure of possession or control. *Smith*, 155 F.3d at 1055 n.7. The Court also finds support for this conclusion in the case law. For example, in *Siripongs*, the police had physical control over the tape on which the conversation had been recorded. 35 F.3d at 1319–20. In *Noel*, the court noted, in the context of a hypothetical scenario, that "[i]f C records B's voice mail or A and B's phone conversation on his own audio tape, C's act would constitute an interception." 568 F.3d at 750. Although Plaintiff argues that *Byrd v. Aaron's, Inc.*, 14 F.Supp.3d 667 (W.D. Pa. 2014), supports her position, the Court is not persuaded. In that case the plaintiff alleged that the defendant violated the Wiretap Act by using software that *inter alia*, logged a computer user's keystrokes or took screen shots of websites a user visited when the plaintiff. *Id.* at 690. However, the plaintiff also alleged the defendant transmitted that information through its servers. 14 F.Supp.3d 667, 690 (W.D. Pa. 2014). In each of these cases, the facts demonstrate that a person who or entity that "captured" or "redirected" a communication also had some measure of control over the communication that had been captured.

As Defendants note, Plaintiff has grouped the Defendants together and appears to argue she can establish liability by showing concerted action. However, in order to state a claim, Plaintiff must be able to allege that each Defendant engaged in conduct that directly violates the Wiretap Act. *See* 18 U.S.C. § 2520(a); *cf. Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004–06 (9th Cir. 2006) (finding no secondary liability under the Stored Communications Act, 18 U.S.C. §§ 2700, *et seq.*); *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1089–90 (N.D. Cal. 2015) (finding no secondary liability under the Wiretap Act). With the exception of Signal360, the Court cannot discern the exact manner in which the other Defendants are alleged to have "acquired" the contents of an oral communication and, thus, Plaintiff fails to state a claim against Yinzcam and the Warriors.

As to Signal360, Plaintiff alleges that it designed its beacon technology to turn on a smartphone microphone and thereafter record, *i.e.* capture, surrounding audio, including human conversations. (Compl. ¶¶ 22–23, 30–31.) Signal360 argues that these allegations are insufficient, because Plaintiff does not allege that any recordings left her phone. In this case, under Plaintiff's theory of liability, Plaintiff's own smartphone is alleged to be equivalent to, for example, the handheld recorder used in the *Siripongs* case. At the pleadings phase, the Court founds the allegations

regarding the manner in which Signal360 designed its beacon technology are sufficient to allege that Signal360 "intercepted," *i.e.* it acquired the contents of, Plaintiff's communications. *Cf. Amati v. City of Woodstock Illinois*, 829 F.Supp. 998, 1008 (N.D. Ill. 1993) ("If a wiretap is placed on an individual's telephone and the conversation is recorded yet never listened to, the individual's conversations would be chilled if he knew of the wiretap. This would be so even if the individual was assured no one would listen to his conversations, because the individual's privacy interests are no longer autonomous. Rather, his privacy interests are subject to another's power.").

Accordingly, the Court concludes Plaintiff has alleged facts to show Signal360 engaged in acts that would qualify as interception under the Wiretap Act. However, for the reasons set forth in the following section, the Court will dismiss both Wiretap Act claims to the extent Plaintiff asserts them against Signal360.

### 2. Plaintiff fails to Allege the Interception of an "Oral Communication."

 Yinzcam also argues that Plaintiff fails to allege facts that are sufficient to show any Defendant intercepted an "oral communication." The term "oral communication" encompasses "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication." 18 U.S.C. § 2510(2).

Plaintiff alleges that "[f]rom April 2016 until July 11, 2016, [she] carried her smartphone on her person. She would take her smartphone to places where she would not invite other people, and to places where she would have private conversations. That is, her phone was present in locations and personal and private situations not generally accessible to the public where the expectation was that her conversations were to remain private." (Compl. ¶ 34.) The Court finds that these allegations are the types of legal conclusions couched as fact that are not sufficient under *Twombly* and *Iqbal*.

Accordingly, the Court GRANTS, IN PART, Yinzcam's motion to dismiss on the basis that Plaintiff also fails to allege facts to support interception of an "oral communication" as that term is defined in the Wiretap Act. The Court's ruling on this issue is applicable to the claims against Signal360 and the Warriors.[8]

### 3. Plaintiff Fails to State A Claim Based on Use.

 Plaintiff also alleges that each of the Defendants violated Section 2511(d). That section of the Wiretap Act "protects against the dissemination of private communications that have been unlawfully intercepted." *Noel*, 568 F.3d at 751 (emphasis omitted). Because the Court has found that Plaintiff has not alleged facts to show her oral communications were intercepted, she also fails to allege a violation of Section 2511(d) as to those defendants. *See Noel*, 568 F.3d at 751.

Even if Plaintiff had alleged facts showing an oral communication was intercepted by any of the Defendants, the Court still finds Plaintiff fails to allege facts to show any Defendant "used" an intercepted communication. In her opposition, Plaintiff argues that Defendants " 'used her oral communications in attempts to deliver targeted marketing messages.' " (Opp. Br. at 10:1–

---

**8.** Yinzcam also argues that Plaintiff cannot viably allege the interception of an "oral communication," because of the permissions she granted when she downloaded the App. The Court does not find this argument persuasive for the reasons set forth in the Court's analysis of standing.

2.) However, there are no facts, as opposed to conclusory allegations, to show that the contents of her communications, as opposed to the beacon signals, were used to send her targeted advertising in the Complaint. For example, there are no allegations, that Plaintiff was speaking to someone, privately, about a particular topic while the App was running and she suddenly received an advertisement about that topic.

Accordingly, Court GRANTS, IN PART, the motions to dismiss, and it dismisses Plaintiff's claims based on alleged "use" in violation of the Wiretap Act as to all Defendants.

## CONCLUSION

For the reasons set forth above, the Court GRANTS, IN PART, AND DENIES, IN PART, Defendants' motions to dismiss. Because the Court cannot say it would be a futile act, the Court GRANTS Plaintiff leave to amend, if she can do so in good faith and in compliance with her obligations under Federal Rule of Civil Procedure 11. If Plaintiff chooses to file an amended complaint, Plaintiff must identify with particularity the precise manner in which each Defendant is alleged to have violated the Wiretap Act.

Plaintiff's amended complaint shall be filed by no later than March 13, 2017. Defendants shall answer or otherwise respond within the time permitted under the Federal Rules of Civil Procedure. In light of this ruling, the Court CONTINUES the case management conference scheduled for February 24, 2017 to April 7, 2017 at 11:00 a.m. The parties shall file an updated joint case management conference statement by March 31, 2017.

**IT IS SO ORDERED.**